# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| COREY DEVON MOTEN | * | CIVIL ACTION NO. 08-1111 |
| VERSUS | * | MAGISTRATE JUDGE HILL |
| COMMISSIONER OF SOCIAL SECURITY | * | BY CONSENT OF THE PARTIES |

## REASONS FOR JUDGMENT

The undersigned was referred this social security appeal by consent of the parties. For the reasons set forth below, the Commissioner's decision will be **AFFIRMED**, and this action **DISMISSED WITH PREJUDICE**.

## I.    Background

The claimant, Corey Devon Moten ("Moten"), born June 11, 1987, filed a claim for supplemental security income payments on January 10, 2006, claiming disability since November 27, 1996, due to borderline intellectual functioning and residuals from having broken both legs.

Moten has a 10th grade education, with regular classes in science, math, physical education, social studies, foreign language, and English; he was also in resource class. In the Individualized Education Program ("IEP") report in the record, dated March 24, 2005, he had a passing grade point average. He was found capable

of earning an income and living independently, and had age-appropriate living skills.

Claimant was scheduled for two psychological consultative examinations and one physical examination before his claim was initially denied.  However, he did not attend any of them.  Accordingly, his application was denied for his failure to attend.

Administration of the Wechsler Intelligence Scale for Children, Revised 3rd Edition ("WISC-III") on May 26, 1997, revealed a verbal IQ score of 64, performance score of 83, and full scale score of 71.  These scores were drastically different from those taken by Dr. Alfred Buxton on April 4, 2008, where Moten obtained a verbal IQ score of 75 and performance score of 72, with the full scale score remaining at 71.[1]

At the exam, Dr. Buxton noted that Moten's primary hobby was playing video games.  He could do minor food preparation, household chores, shopping, and money management.  He could engage in independent local travel, mediated communication, and telling time on a regular clock.

On examination, Moten's verbal receptive and expressive language skills, dress and groom, and social skills were good.  Recent and remote memories were intact for events, and fair to poor with memory markers; ability to attend and concentrate was good.

---

[1]This examination occurred after the hearing.  Dr. Bruxton's report was apparently received before the ALJ decision was issued.

Pace was even, with a mild to moderately slow rate of performance, which Dr. Buxton opined was probably related to Moten's previous head injury.  His response latency was normal.  Intellect was sub-average, judgment was good, reasoning and reflective cognition were fair, and insight was poor.  Cognitions were simple and concrete, but logical.

Mood was even, but somewhat flat and bland.  Affect was mood congruent. Self-image was fair, with fair goal orientation.  Moten was alert, responsive, and oriented in all four spheres.

Dr. Buxton opined that at that point, it appeared that Moten had made some recovery from his traumatic brain and leg injuries in 1996, although some residuals still remained.  Moten presented with borderline intellectual functioning and commensurate adaptive daily living skill development.  Dr. Buxton determined that at best, claimant would be marginally competent as a manager of his own personal affairs.

As to work, Dr. Buxton opined that Moten was bright enough to understand simple instructions and commands, but would have difficulty with more complex instructions and commands.  He found that as long as the tasks were kept at a relatively simple and basic level such that they could be performed in somewhat rote fashion, and a premium was not placed on great attention to detail or speed, then, at

3

a minimally adequate level, Moten should be able to perform in a reliable and dependable fashion as an employee.

Dr. Buxton also determined that Moten might be able to tolerate the frustration and stress he would encounter at a minimally adequate level as long as the tasks were kept relatively simple and uncomplicated, and he was in an environmental setting where situations did not change rapidly and the demand on Moten was such that there was not a great deal of demand for significant frequent adaptation by him.  He further observed that Moten was friendly enough, and that, at a minimally adequate level, he should be able to establish and maintain mutually rewarding relationships with coworkers and supervisors.

Dr. Buxton found that essentially, Moten seemed to be best equipped to perform simple, unskilled light-duty manual tasks in a relatively unpressured and non-changing environment under conditions of fading direct supervision as he gained in his level of mastery of task performance.  He determined that claimant's Global Assessment of Functioning ("GAF") score was 65 over the last 12 months.

In the Medical Source Statement of Ability to do Work-Related Activities, Dr. Buxton found that claimant was moderately limited as to his ability to understand, remember, and carry out short, simple instructions; make judgments on simple work-related decisions; interact appropriately with the public, supervisors, and coworkers;

4

respond appropriately to work pressures in a usual work setting, and respond appropriately to changes in a routine work setting.  He determined that Moten was markedly limited in his ability to understand, remember, and carry out detailed instructions.

In the Psychiatric Review Technique dated June 22, 2006, Joseph K. Kahler, Ph.D., found that there was insufficient evidence to fully evaluate Moten's functional limitations due to his condition.  He noted that claimant had failed to attend any of the scheduled exams, and that there had been no response to multiple contact efforts from Moten or his third-party regarding his last missed exam.

At the hearing on March 13, 2008, Moten was 20 years old.  He stated that he had completed the 10th grade in special education classes.

Moten testified that he was involved in an accident in 1996, where he had suffered from a closed head/brain injury and broke both legs.  He reported that he still had slow reactions and leg aches.

As to past employment, Moten testified that he had worked for six weeks in a summer job program.  He stated that he had worked in maintenance at a local supermarket, but that job lasted for only about a week.  He reported that he got fired because "I wasn't what they wanted.  I wasn't working fast enough."  (Tr. 129-30).

Regarding activities, Moten reported that he mostly stayed at home and played video games.  He also watched television.  He said that he sometimes did housekeeping, such as making his bed and cleaning up his room.  He stated that he had no problems with grooming.

Moten testified that he was not seeing any doctors or taking any medications. He said that he could lift 10 to 20 pounds.  He had no problems with walking, standing, sitting, or picking up objects.  He stated that he did not get along well with other people, because it was hard for him to socialize sometimes.

Claimant's grandmother testified that Moten had sustained a head injury where he was in a coma from November 13 until the last week in December of 1996.  She reported that he could not concentrate at all, and had memory problems since then. She stated that he did some things around the house, like mowing the grass, but had to stop after 10 to 15 minutes because he would get distracted.

The medical expert, Dr. Jeremy Cole, testified that there was nothing to support Moten's disability claim because he needed a more thorough evaluation.  He recommended additional intelligence testing, which was later performed by Dr. Buxton.

During the examination of Wendy Klamm, the vocational expert ("VE"), the Administrative Law Judge ("ALJ") posed a hypothetical in which she asked the VE

to assume a claimant age 20 years old; who had 10th grade education through a special education curriculum; had no past relevant work experience; could lift 20 pounds occasionally and 10 pounds frequently; could walk, stand, or sit for six hours in an eight-hour day; needed a job with simple one, two, or three-step instructions; could not operate a vehicle, because he had no license; could not deal with the public, except rarely, and had occasional dealings with co-workers. In response, Ms. Klamm testified that such claimant could work as an assembler, of which there were 1,500 jobs available statewide and 85,700 nationally; garment folder, of which there were 2,675 jobs statewide and 174,100 nationally, and laundry press operator, of which there were 575 positions statewide and 45,400 nationally.

## II. Law and Opinion

On appeal, Moten argues that the ALJ erred: (1) in finding that jobs existed in significant numbers for a person with his age, education, work experience, and residual functional capacity ("RFC"); (2) in finding that Moten did not meet the listing for mental retardation, and (3) in finding that his testimony was not credible.

As to the first argument, Moten asserts that an individual with the RFC defined by Dr. Buxton could not compete in the work place. However, Dr. Buxton specifically determined that, with some limitations, Moten could maintain employment. He found that as long as the tasks were kept at a relatively simple and

7

basic level such that they could be performed in somewhat rote fashion and a premium was not placed on great attention to detail or speed, then, at a minimally adequate level, Moten should be able to perform in a reliable and dependable fashion as an employee.  He concluded that Moten seemed to be best equipped to perform simple, unskilled light-duty manual tasks in a relatively unpressured and non-changing environment under conditions of fading direct supervision as he gained in his level of mastery of task performance.  Accordingly, based on the *only* medical report of record, the ALJ properly determined that Moten was able to work with his RFC.

Next, Moten argues that the hypothetical posed to the vocational expert by the ALJ could not be said to incorporate reasonably all disabilities recognized by the ALJ.  However, in the hypothetical, the ALJ specifically considered Moten's age, education, lack of work experience, and limitations to a job with simple one, two, or three-step instructions, rare dealings with the public, and occasional dealings with coworkers.  In fact, the ALJ gave Moten the benefit of the doubt and asked the VE to assume that Moten was in special education classes only, rather than in regular classes with resource as the evidence showed.

In response to the hypothetical, Ms. Klamm identified three jobs which existed in significant numbers.  As the ALJ's hypotheticals to the vocational expert

reasonably incorporated all disabilities of the claimant recognized by the ALJ, and the claimant had the opportunity to correct deficiencies in the ALJ's question, the ALJ's findings are entitled to deference. *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001); *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).

For the next argument, claimant asserts that the ALJ erred in failing to find him disabled pursuant to Listing 12.05, which provides, in pertinent part, as follows:

> 12.05 *Mental retardation*: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

> \*\*\*

> B. A valid verbal, performance, or full scale IQ of 59 or less;

> Or

> C. A valid verbal, performance, or full scale IQ of 60 through 70 *and* a physical or other mental impairment imposing an additional and significant work-related limitation of function.

(emphasis added).  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C.

Claimant argues that he meets this listing, because obtained a full scale IQ score of 71.  However, he did not prove that he met the *second* part of § 12.05(C), *i.e.*,

"a physical or other mental impairment imposing an additional and *significant* work-related limitation of function."  (emphasis added).  While he asserts that his two broken legs constitute the component of physical impairment imposing an additional significant limitation, he has not sought any medical attention for his legs in  over 10 years.  There is no medical evidence in the record to satisfy this requirement.  Furthermore, claimants testimony at his hearing refutes this argument.

For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria.  (emphasis in original).  *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 891, 107 L.Ed.2d 967 (1990).  An impairment that manifests only some of those criteria, no matter how severely, does not qualify.  *Id*.  As claimant has not demonstrated that he met all of the criteria under § 12.05, the ALJ's finding that claimant's impairments did not meet this listing is entitled to deference.

Finally, Moten argues that the ALJ erred in assessing his credibility.  Specifically, he asserts that the ALJ failed to consider his grandmother's testimony, Dr. Buxton's report, and the school records regarding his serious problem with pace and maintaining concentration.  However, Dr. Buxton found that Moten's ability to attend and concentrate was good, and that his pace was even, with a mild to moderately slow rate of performance.  He further found that as long as the tasks were kept at a relatively simple and basic level, could be performed in somewhat rote

fashion, and a premium was not placed on great attention to detail or speed, then Moten should be able to perform in a reliable and dependable fashion as an employee.

It is well established that the ALJ's finding as to credibility is entitled to great deference. *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000). As the medical evidence supports the ALJ's finding, claimant's argument lacks merit.

Based on the foregoing, **IT IS HEREBY ORDERED** that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Signed January 4, 2010, at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE